UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 5359

| | |
|---|---|
| SHAWN M. TOMPKINS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| CHINA XD PLASTICS COMPANY LTD., JIE HAN, and TAYLOR ZHANG, | |
| Defendants. | |



## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Shawn M. Tompkins ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, People's Republic of China State Administration of Industry and Commerce ("SAIC") filings, wire and press releases published by and regarding China XD Plastics Company Ltd. ("CXDC" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity

for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased CXDC's common stock between August 12, 2009 and July 10, 2914, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against CXDC and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      CXDC, formerly known as NB Telecom, Inc., was originally incorporated as NB Payphones Ltd. under the laws of the state of Pennsylvania on November 16, 1999. On December 27, 2005, the Company migrated its state of organization to the state of Nevada and effective March 23, 2006, the name was changed to NB Telecom., and later to CXCD.  The Company is headquartered in Harbin, Heilongjiang province, People's Republic of China ("PRC").

3.      CXDC is a specialty chemical company that is engaged in the research, development, manufacture, and sale of modified and engineering plastics products primarily for use in the fabrication of automobile parts and components in the PRC. Its modified plastics are used to fabricate various auto components, including exteriors consisting of automobile bumpers, rearview and side view mirrors, and license plate parts; interiors, such as door panels, dashboards, steering wheels, glove compartments, and safety belt components; and functional components comprising air conditioner casings, heating and ventilation casings, engine covers, and air ducts.  The Company also offers specially engineered plastics and environment-friendly

plastics for use in oilfield equipment, mining equipment, vessel propulsion systems, and power station equipment.

4.      Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.  Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) CXDC reports gross margins substantially higher than its main competitor, yet spends much less on research and development ("R&D"); (ii) CXDC reported substantially higher revenues and net income in its SEC filings compared to filings made to the Chinese state regulatory authority known as the State Administration for Industry and Commerce ("SAIC") during the fiscal years 2008 through 2010; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.      On July 10, 2014 the price of CXDC common stock fell $1.17 (15%) to close at $6.48 on heavy trading volume after the release of an article by the research entity Bleeker Street Research on *SeekingAlpha.com*, which disclosed for the first time, among other things, that CXDC reports gross margins substantially higher than its main competitor, yet spends much less on R&D, and CXDC has reported higher revenues and net income in SEC filings compared to SAIC filings.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

9.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the securities of CXDC at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant CXDC is a Nevada company headquartered and operating in China. At all relevant times herein CXDC's common stock was listed on the NASDAQ under the symbol "CXDC").

13.     Defendant Jie Han ("Han") at all relevant times was the Company's Chief Executive Officer and Chairman of the Board of Directors.

14.     Defendant Taylor Zhang ("Zhang") at all relevant times was the Company's Chief Financial Officer.

15.     Defendants Han and Zhang are referred to herein, collectively, as the "Individual Defendants."

16.     Defendant CXDC and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Period

17.     The Class Period begins on August 12, 2009 when CXDC filed a materially false and misleading Form 10-Q for the second quarter ended June 30, 2009 with the SEC.  The 10-Q was signed by defendant Han.  Accompanying the Form 10-Q was separately executed Sarbanes-Oxley Act of 2002 ("SOX") certifications singed by defendant Han falsely attesting to the accuracy of the Form 10-Q.

18.     On April 15, 2010, CXDC issued a press release announcing the financial and operating results for the fourth quarter and year ended December 31, 2009.  The Company reported total revenue increased 79.2% to $135.7 million compared to $75.8 million in 2008.  Net income for the full year 2009 was $4.0 million, down 51.4% from $8.2 million in 2008.  Gross margin was 22.5% and 22.9% for the full year 2009 and 2008, respectively.

19.     On April 15, 2010, the Company also filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 31, 2009 (the "2009 Form 10-K"), which was signed by, among others, defendants Han and Zhang, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2009 Form 10-K also contained SOX certifications signed by defendants Han and Zhang, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

5

20.     With regard to gross margins, the 2009 Form 10-K specifically notes that:

Our gross margin decreased slightly from 22.9% during the year ended December 31, 2008 to 22.5% during the year ended December 31, 2009. The decrease was mainly attributed to the slight increase of raw material price and the slight increase of percentage of lower margin products in response to increasing demand of modified plastics used by economy vehicle models in China. Such increase in demand was spurred by the sales tax cuts and government subsidies for economy vehicle models.

21.     On March 31, 2011, the Company issued a press release announcing the financial and operating results for the fourth quarter and year ended December 31, 2010.  The Company reported record total revenue of $249.8 million for the fiscal year 2010, representing an 84.0% increase over the fiscal year 2009.  For the fiscal year 2010, net income was $28.8 million, compared to net income of $4.0 million for the fiscal year 2009.  Moreover, according to the press release, "Gross margin was 25.6% compared to 23.6% in the same period last year. The year-over-year increase in gross margin was due to the continuing shift in the Company's product mix to higher value-added products as a result of the Company's successful research, development and marketing efforts."

22.     On March 31, 2011, the Company also filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 31, 2010 (the "2010 Form 10-K"), which was signed by, among others, defendants Han and Zhang, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2010 Form 10-K also contained SOX signed by defendants Han and Zhang, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     With regard to gross margins, the 2010 Form 10-K specifically notes that:

Our gross margin increased from 22.5% during the year ended December 31, 2009 to 24.6% during the year ended December 31, 2010. The increase was

6

mainly attributed to the increased sales of our high-end products as a percentage to total sales during the year ended December 31, 2010 due to our efforts in developing and selling more high value-added automotive modified plastics. Such increase in demand was driven by increasing demand for automobiles by Chinese consumers, as well as the increase of plastic content on the per-vehicle-basis in China.

24.     On March 26, 2012, the Company issued a press release announcing the financial and operating results for the fourth quarter and year ended December 31, 2011.  The Company reported total revenue of $381.6 million, an increase of 52.8% from $249.8 million in 2010.  Net income was $60.5 million, compared to $28.8 million in 2010.  Moreover, according to the press release, "Gross margin was 25.1%, compared to 24.6% in the same period of the prior year. The year-over-year increase in gross margin was mainly due to a shift in the Company's product mix to higher margin and higher value-added products."

25.     On March 26, 2012, the Company also filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 31, 2011 (the "2011 Form 10-K"), which was signed by, among others, defendants Han and Zhang, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2011 Form 10-K also contained SOX signed by defendants Han and Zhang, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     With regard to gross margins, the 2011 Form 10-K specifically notes that:

Our gross margin increased to 25.1% in 2011 from 24.6% in 2010.   The increase was in line with the revenue growth, mainly attributed to the higher proportion of revenues of our high-end products as a percentage of total revenues in 2011 as a result of our efforts in developing and selling more high value-added automotive modified plastics. Such increase in demand was driven by increasing demand for automobiles by Chinese consumers, as well as the increase of plastic content on a per-vehicle-basis in China.

27.     On March 25, 2013, the Company issued a press release announcing the financial and operating results for the fourth quarter and year ended December 31, 2012.  The Company reported record total revenue $599.8 million, an increase of 57.2% from $381.6 million in 2011. Net income was $85.9 million, compared to $60.5 million in 2011.  Moreover, according to the press release, "Gross margin was 24.0%, compared to 25.1% in the same period of the prior year. The year-to-year decrease in gross margin was mainly attributed to the more relaxed pricing and profit margin offered to our distributors and the intentional decrease in post-sales service fees as a result of the Company's adjustment in its marketing strategy."

28.     On March 25, 2013, the Company also filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 31, 2012 (the "2012 Form 10-K"), which was signed by, among others, defendants Han and Zhang, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2012 Form 10-K also contained SOX signed by defendants Han and Zhang, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     With regard to gross margins, the 2012 Form 10-K specifically notes that CXDC's "gross margin decreased to 24.0% in 2012 from 25.1% in 2011 mainly due to the decrease of post-sales service revenue."

30.     On March 26, 2014, the Company issued a press release announcing the financial and operating results for the fourth quarter and year ended December 31, 2013.  For the fiscal year 2013, the Company reported total revenue of $1,050.8 million, an increase of 75.2% from $599.8 million in 2012.  Net income was $133.8 million, compared to $85.9 million in 2012.  Gross margin was 21.3% compared to 24.0% in fiscal year of 2012.

31.    On March 26, 2014, the Company also filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 31, 2013 (the "2013 Form 10-K"), which was signed by, among others, defendants Han and Zhang, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2013 Form 10-K also contained SOX signed by defendants Han and Zhang, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.    With regard to gross margins, the 2012 Form 10-K specifically notes that:

Gross margins recovered after the first quarter of 2013 due to the increase of revenues contribution from higher-ended products, such as Engineering Plastics, Modified PA and Environmentally Friendly Plastics where we were able to successfully sell more higher-end products to both existing and new customers. We expect gross margin recovery continuing in 2014 as we shift our product mix towards higher-end categories.

33.    The statements referenced above in paragraphs 17–31 were materially false and misleading because Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) CXDC reports gross margins substantially higher than its main competitor, yet spends much less on research and development ("R&D"); (ii) CXDC reported higher revenues and net income in SEC filings compared to SAIC filings during the fiscal years 2009 and 2010; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Emerges**

34.    On July 10, 2014, before the market opened, Bleeker Street Research published a report on the investing website *SeekingAlpha.com*, entitled "China XD Plastics: When The

Numbers Don't Add Up, There's Over 80% Downside" (the "Bleeker Street Report"), which disclosed, for the first time, that CXDC reports margins substantially higher than its main competitor, yet spends much less on R&D, and from 2008 through 2010, CXDC reported higher revenues and net income in SEC filings compared to SAIC filings.

35.     According to the Bleeker Street Report, CXDC's main publicly traded competitor is Guangzhou Kingfa Science & Technology Co., Ltd. ("Kingfa"), which trades on the Shanghai Exchange.   Kingfa is a much larger company that generates billions of dollars in revenue. According to the Bleeker Street Report, Kingfa invests 2-5% of their annual sales in R&D. CXDC's R&D spending, on the other hand, as a smaller company with far less resources, has been relatively miniscule compared to Kingfa.   However, CXDC not only has better gross margins, but substantially better gross margins:

| Gross Margins | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|
| CXDC | 22.50% | 24.60% | 25.10% | 24.00% | 21.30% |
| Kingfa | 15.70% | 14.80% | 18.70% | 17.70% | 15.00% |

36.     In 2013, CXDC generated 45% less revenues than Kingfa but reported net income that was 184% higher than Kingfa. Since 2011 Kingfa has seen its net income decline by 21% while CXDC revenues have grown 24%. On the other hand, CXDC has seen net income grow by 133% and revenues grow by 175%.

37.     Moreover, the Bleeker Street Report discloses the massive discrepancies between CXDC's SAIC filings between 2008 and 2010 and the Company's SEC filings during that time. According to the report, the revenue and net income CXDC reported to the SAIC was a fraction of what it reported to the SEC:

**Chinese SAIC vs US SEC Financials** (US$ million *)

| SAIC Filings | 2008 | 2009 | 2010 |
|---|---|---|---|
| Revenue | 63.4 | 110.9 | 196.3 |
| Net Income | 0.1 | 0.5 | 3.9 |
| Taxes Paid | 0.1 | 0.2 | 0.4 |
| SEC Filings | | | |
| Revenue | 75.7 | 135.7 | 249.8 |
| Net Income | 8.2 | 4.0 | 28.8 |
| Taxes Paid | 0.04 | 0.07 | 0.3 |

38.    The percentage of the discrepancies between SAIC and SEC filings from 2008 to 2010 is the following:

| Revenue | 2008 | 2009 | 2010 |
|---|---|---|---|
| SAIC Filings | 63.4 | 110.9 | 196.3 |
| SEC Filings | 75.7 | 135.7 | 249.8 |
| % Difference | 84% | 82% | 79% |
| Net Income | | | |
| SAIC Filings | 0.1 | 0.5 | 3.9 |
| SEC Filings | 8.2 | 4 | 28.8 |
| % Difference | 1% | 13% | 14% |

39.    These adverse facts caused the value of CXDC stock to decline $1.17, or 15%, to close at $6.48 on July 10, 2014 on heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class of all persons and entities who purchased CXDC's common stock between August 12, 2009 and July 10, 2914, inclusive, seeking to

pursue remedies under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of CXDC, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the CXDC Class Period, securities of CXDC were actively traded on the NASDAQ Global Market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by CXDC or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

44.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of CXDC;

- whether the price of CXDC common stock was artificially inflated during the Class Period; and

- to what extent the members of the Class have sustained damages and the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- CXDC securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold CXDC securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

13

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT 1

### For Violations of § 10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against CXDC and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

14

CXDC securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire CXDC securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for CXDC securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CXDC's finances and business prospects.

53.     By virtue of their positions at CXDC, Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of CXDC securities from their personal portfolios.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of CXDC, the Individual Defendants had knowledge of the details of CXDC's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of CXDC. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to CXDC's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of CXDC securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning CXDC's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired CXDC securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, CXDC securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of CXDC securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CXDC securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of CXDC securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

### For Violations of § 20(a) of the Exchange Act
### (Against the Individual Defendants)

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of CXDC, and conducted and participated, directly and indirectly, in the conduct of CXDC's business affairs. Because of their senior positions, they knew the adverse non-public information about CXDC's misstatement of income and expenses and false financial statements.

62.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to CXDC's financial condition and results of operations, and to correct promptly any public statements issued by CXDC which had become materially false or misleading.

63.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which CXDC disseminated in the marketplace during the Class Period concerning CXDC's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause CXDC to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of CXDC within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of CXDC securities.

64.    Each of the Individual Defendants, therefore, acted as a controlling person of CXDC.  By reason of their senior management positions and/or being directors of CXDC, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, CXDC to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of CXDC and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CXDC.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring all Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   July 16, 2014

                                                    Respectfully submitted,

                                                    **POMERANTZ LLP**

                                                    Jeremy A. Lieberman
                                                    Francis P. McConville
                                                    600 Third Avenue, 20th Floor
                                                    New York, New York 10016
                                                    Telephone:  (212) 661-1100
                                                    Facsimile:  (212) 661-8665
                                                    Email:  jalieberman@pomlaw.com
                                                             fmcconville@pomlaw.com

                                                    **POMERANTZ LLP**
                                                    Patrick V. Dahlstrom
                                                    10 South La Salle Street, Suite 3505
                                                    Chicago, Illinois 60603
                                                    Telephone:  (312) 377-1181
                                                    Facsimile:  (312) 377-1184
                                                    Email:  pdahlstrom@pomlaw.com

                                                    *Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.  I, _Shawn M. Tompkins_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against China XD Plastics Company Ltd. ("China XD" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire China XD securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired China XD securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in China XD securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _____ 7-15-14 _____
(Date)

_Shawn M. Tompkins_
(Signature)

_Shawn M. Tompkins_
(Type or Print Name)

**China XD Plastics Company Ltd. (CXDC)**          **Tompkins, Shawn**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 06/23/2014 | PUR | 520 | $8.3723 |
| 06/23/2014 | PUR | 295 | $8.4639 |
| 06/23/2014 | PUR | 460 | $8.4517 |
| 06/23/2014 | PUR | 2,206 | $8.4714 |