UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re CHINA XD PLASTICS COMPANY
LIMITED Securities Litigation.

This Document Relates to: All Actions

OPINION AND ORDER

14-cv-05308 (GBD)



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, United States District Judge:

Lead Plaintiffs Terry Frishkorn and James Wang, pursuant to Rule 23 of the Federal Rules of Civil Procedure, bring this consolidated class action on behalf of a class consisting of persons who purchased the common stock of China XD Plastics Co. Ltd. stock between March 25, 2014 and July 10, 2014. (Consolidated Class Action Complaint for Violations of Federal Securities Laws ("CAC"), (ECF No. 19), at ¶ 1.) The CAC alleges securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 ("Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants China XD Plastics Co. Ltd. ("China XD" or "Company"), and five of its officers and directors[1] (collectively, the "Individual Defendants," and with China XD, "Defendants"). (*Id.* at ¶¶ 92-103.) The CAC also asserts a claim for control person liability under Section 20 of the Act, 15 U.S.C. 78t(a), against all Individual

---

[1] The five officers and directors are Jie Han, Taylor Zhang, Lawrence W. Leighton, Linuyan Zhai, and Feng Li (collectively, "Individual Defendants").

1

Defendants.[2] (*Id.* at ¶¶ 104-09.) Defendants moved to dismiss the complaint with prejudice pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (Motion to Dismiss the Consolidated Class Action Complaint, (ECF No. 24).)

The gravamen of the CAC is that Defendants made material misrepresentations by overstating their 2012 and 2013 financial position in filings with the SEC, as evidenced by what the CAC contends were lesser but more accurate financial numbers filed with the Chinese State Administration for Industry and Commerce ("SAIC"). Because the Plaintiffs have failed to plausibly plead facts supporting their conclusion that China XD's SEC filings were overstated based solely upon a comparison to its SAIC filings, Defendants' motion is granted.

## I. Background

China XD is a Nevada corporation whose shares trade on the NASDAQ Global Market under ticker symbol "CXDC." (CAC at ¶¶ 15, 85; *id.* at ¶ 77 (incorporating by reference financial news article stating ticker symbol).) Its principal executive offices are in Harbin, Heilongjiang Province, in the People's Republic of China. (*Id.* at ¶ 15.) It researches, develops, manufactures, and sells modified and engineered plastics products for use in manufacturing in China, principally in the automobile industry. (*Id.*)

China XD's 2012 10-K indicates that it adopted a restructuring plan in 2011. China XD Plastics Co. Ltd., Annual Report (Form 10-K) (Dec. 31, 2012), at 2.[3] As of December 31, 2012,

---

[2] Jie Han is China XD's Chairman and Chief Executive Officer, and has held that post since May 2009. (*Id.* at ¶ 16). Defendant Taylor Zhang is the Company's Chief Financial Officer, and he too has held his post since May 2009. (*Id.* at ¶ 17.) Both Defendants Lawrence W. Leighton and Linyuan Zhai have served as directors and audit committee members of China XD since May 2009. (*Id.* at ¶¶ 18-19.) Defendant Feng Li has served as a direct and audit committee member since November 2012. (*Id.* at ¶ 20.)

[3] On a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in

2

the Company was comprised of a total of nineteen subsidiary and sub-subsidiary companies. *Id.* at 3.[4] During 2013, the Company continued to execute the restructuring plan, and as of December 31, 2013, was comprised of a total of sixteen subsidiary and sub-subsidiary companies. China XD Plastics Co. Ltd., Annual Report (Form 10-K) (Dec. 31, 2013), at 4.[5]

In the United States, China XD files a consolidated financial statement with the SEC that combines the financial statements of all of its Chinese subsidiaries. In China, however, each of China XD's Chinese subsidiaries[6] files a separate report with the SAIC that includes only that subsidiary's financial statement. (CAC at 13 n.17 (indicating that the China XD SAIC financial figures set forth in the CAC were compiled from its subsidiaries SAIC filings); *Id.* at ¶ 50

---

bringing suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

[4] China XD's 2012 subsidiaries: Favor Sea Ltd.; Favor Sea (US) Inc.; Xinda Holding (HK) Co. Ltd.; Xinda Holding (HK) US Sub. Inc.; Harbin Xindu Macromolecule Material Co., Ltd.; Heilongjiang Xinda Enterprise Group Co., Ltd.; HK Engineering Plastics Co. Ltd. Harbin Branch; U.S. China XD Plastics Co. Ltd. Harbin Representative Office; Haikou Xinda Plastics New Materials Co., Ltd.; Heilongjiang Xinda Enterprise Group Macromolecule Material Research Center Co., Ltd.; Harbin Xinda Plastics Composite Materials Co., Ltd.; Harbing Xinda Plastics New Materials Co., Ltd; Harbing Meiyuan Enterprise Management Service Co., Ltd.; Heilongjiang Xinda Software Development Co., Ltd.; Heilongjiang Xinda Enterprise Group Technology Center Co., Ltd.; Harbin Xinda Macromolecule Materials Testing Technical Co., Ltd.; Hulkou Xinda Plastics New Materials Enterprise Technical Center Co., Ltd.; Hulkou Xinda Software Development Co., Ltd.; Harbing Xinda Plastics Material Research Center Co., Ltd.

[5] China XD's 2013 subsidiaries: Favor Sea Ltd.; Xinda (HK) International Trading Co., Ltd.; Xinda Holding (HK) Co., Ltd.; Xinda Holding (HK) US Sub Inc.; Harbin Xinda Marcromolecule Material Co., Ltd.; Heilongjiang Xinda Enterprise Group Co., Ltd.; Heilongjiang Xinda Enterprise Group Technology Center Co., Ltd.; Heilongjiang Xinda Enterprise Group Macromolecule Material Research Center Co., Ltd.; Sichuan Xinda Group Co., Ltd.; Sichuan Xinda Group Meiyuan Enterprise Management Service Co.; Sichuan Xinda Group Software Development Co., Ltd.; Sichuan Xinda Group Sales Co., Ltd.; Harbin Xinda Plastics New Materials Co., Ltd.; Harbing Meiyuan Enterprise Management Service Co., Ltd.; Heilongjiang Xinda Software Development Co., Ltd.; Harbin Xinda Plastics Material Research Center Co., Ltd.

[6] China XD's foreign subsidiaries are not required to file financial information with the SAIC. *See* Article 2, Measures for the Annual Inspection of Enterprises, Feb. 24, 2006 (incorporated by reference in CAC at 15 n.23) (stating that SAIC filings are not required for enterprises from foreign countries that do not engage in business operations in China).

(discussing the incentive for China XD's *subsidiaries* to file accurate annual reports with the SAIC).)

Before trading began on the morning of July 10, 2014, analyst firm Bleecker Street Research published a report entitled, "China XD Plastics: When the Numbers Don't Add Up, There's Over 80% Downside." (*Id.* at ¶ 77.) It provided a four-bullet point summary:

- CXDC reports substantially margins [sic] higher than its main competitor, yet spends much less on R&D.

- From 2008-2010 CXDC reported higher revenues and net income in SEC filings compared to SAIC filings.

- CXDC CFO refused to answer basic questions about his company, and did not respond to questions.

- If the trend of overstating net income from 2008-2010 continues, shares should be worth $1.38/share.

Bleecker Street Research, "China XD Plastics: When the Numbers Don't Add Up, There's Over 80% Downside" (Jul. 10, 2014) ("Report") (attached in Declaration of Jerome S. Fortinksy in Support of Defendant China XD Plastics Company Limited's Motion to Dismiss the Consolidated Class Action Complaint ("Fortinsky Decl."), Exhibit B, (ECF No. 26-2), at 1).[7] In another overview section immediately following the summary, it stated:

> CXDC entered the US public markets through a reverse merger, a method that many fraudulent companies have previously used. Below is a summary of what we have found researching CXDC.
>
> - Reported profit margins 200% higher than its larger and better funded competitor Kinfa.
>
> - Income reported to the Chinese SAIC is much smaller than Income reported to the SEC from 2008-2010.

---

[7] This Report was later revised. *See infra.* This Court may take judicial notice of both versions of the Bleecker Street Research Report without converting this motion to dismiss into a motion for summary judgment because the Report is incorporated by reference, (*see* CAC at ¶¶ 9, 54, 77), and because both versions were known to Plaintiffs and relied upon in bringing suit. *Supra* note 3.

4

- If the trend of inflating net income in SEC Statements from 2008-2010 had continued, then 90% of CXDC's 2013 profits could have been exaggerated in SEC filings.

- CXDC shares a CFO with the now defunct Advanced Battery Technologies.

- When asked (just one!) a basic question about the company the CFO said that he needed to go and would call us back in 20 minutes. We never received a call back.

*Id.*

On the day the article was published, the price of China XD securities declined more than 15% from $7.65 per share to $6.48 per share on heavy trading volume. (CAC at ¶¶ 9, 78.)

On July 14, 2014, in light of the irregular trading that took place four days earlier, China XD responded to the Bleecker Street Research article in a Press Release, titled "China XD Plastics Refutes Allegations in Seeking Alpha Article."[8] In relevant part, the Press Release stated:

> China XD Plastics believes that the Bleecker Street Article contains numerous errors of facts, misleading speculations and malicious interpretations of events. China XD Plastics believes that the dissemination of these spurious allegations is irresponsible. The Company is currently evaluating what actions it will take with regard to Bleecker Street.
>
> The following presents the Company's rebuttal to the major allegations in the article.
>
> **Fact: China XD Plastics Raised Capital at Market Rates**
>
> . . .
>
> **Fact: CXDC's Gross Margins Are in Line with Competitors Who Engage in Similar Business Lines**
>
> . . .

---

[8] Available at http://www.sec.gov/Archives/edgar/data/1353970/000107997314000385/ex99x1.htm (last visited Feb. 27, 2016) (cited in CAC at ¶ 54).

5

>  **Fact: A Company's Days Sales Outstanding (DSO) can Fluctuate due to Macroeconomic Conditions and CXDC's DSO has Stabilized**
>
> **Fact: Mr. Zhang Conducts Business Based on the Highest Ethical Standards and was not Employed by Companies When They Were Accused of Wrongdoings**
>
> . . .
>
> **Fact: China XD Plastics' Change of Auditors was Based on its Growth and is Justifiable**
>
> . . .

*Id.* Most relevant, it stated:

> **Fact: The Company's SEC and SAIC Filings are Consistent**
>
> *Had Bleecker Street Research consolidated our financial statements to include all of the Company's subsidiaries* and done a reconciliation between US GAAP and China accounting principles, *it would have concluded that our SAIC and SEC filings are consistent. Bleecker Street Research failed to include the SAIC filings of all subsidiaries of the Company in its calculations.* In addition to this failure, such methodology is also flawed because it does not, for example, take into account any eliminations of inter-group transactions.

*Id.* (emphasis added).

One day later, on July 15, 2014, a class-action lawsuit was filed, which led to the above-captioned action.[9]

On July 31, 2014, counsel for China XD contacted the author of the Bleecker Street Research Report. In light of that conversation, the author made several revisions, including

---

[9] Sungwan Yang filed the initial complaint. (Class Action Complaint for Violations of Federal Securities Laws, (ECF No. 2).) Another plaintiff filed a lawsuit on July 16, 2014. (Complaint for Violations of Federal Securities Laws, (Case No. 14-cv-5359, ECF No. 1).) These lawsuits were consolidated into the above-captioned action after Lead Plaintiffs filed a motion to consolidate the actions and to serve as lead plaintiffs. (*See* Order Consolidating Related Actions and Appointing Lead Plaintiff and Lead Counsel, (ECF No. 13).)

removing all but the first bullet points in each of its excerpts reprinted above. *See* Bleecker Street Research, China XD Plastics: When the Numbers Don't Add Up, There's Over 80% Downside (Jul. 10, 2014) (attached in Fortinsky Decl., Exhibit C, (ECF No. 26-3), at 1). Additionally, the author retracted the entire section of the Report stating that China XD's "SAIC Filings From 2008-2010 Did Not Match SEC Filings." (Fortinsky Decl., Exhibit D, (ECF No. 26-4), at 8-9 (providing redline comparing original and revised Bleecker Street Research Reports).)

## II. Standard of Review and Applicable Law

### A. Securities and Exchange Act of 1934 Rule 10(b) and SEC Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b–5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014). Although section 10(b) does not expressly provide for private causes of action, private actions have been "long recognized" by the Supreme Court "to enforce the provision and its implementing regulation." *Id.* To recover damages for violations of section 10(b) and Rule 10b-5, a plaintiff must allege and then prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* (citation and internal quotation marks omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7

the defendant is liable for the misconduct alleged." *Id.* On the other hand, when the facts pleaded leave the Court speculating as to whether the defendant is liable for the misconduct alleged, the plaintiff has failed to carry this burden. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555)). Although a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, it need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

### C. Rule 9(b) and the Private Securities Litigation Reform Act

Although under Rule 8 a party need only submit "a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), a plaintiff alleging securities fraud is subject to the heightened pleading standards imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). With regard to the material-misrepresentation element, these standards require the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kosaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Additionally, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Thus, to plead falsity, "plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174, (2d Cir. 2004).

### III. Failure to State a Claim

Defendants argue that the CAC should be dismissed because it has not adequately alleged a material misstatement, loss causation, or scienter.

### A. The CAC Has Not Adequately Pleaded a Material Misstatement

The CAC generally alleges significant discrepancies between the revenues, tax expenses, net income, and gross margin that China XD reported in its SEC and SAIC filings, primarily in reliance on the initially released Bleecker Street Report which suggested that its 2008-10 filings with the SEC did not match its SAIC filings for those years. (CAC at ¶¶ 34-35, 46, 48.) The CAC sets forth a comparison of different values reported for revenue, tax expense, and net income in SEC versus SAIC filings in 2012 and 2013. (*Id.* at ¶ 48, Table 1.) The CAC alleges that the higher SEC-reported figures are false and that the lower SAIC figures represent the true financial condition of the Company. (*Id.* at ¶¶ 3, 7, 36, 47, 49.)

The CAC provides four reasons in support of this allegation. First, it contends that Chinese companies and their officers often operate beyond the reach of criminal and civil judgments and sanctions imposed by American courts. They are subject to penalties imposed in China for filing false SAIC documents. Therefore, there is greater incentive for Chinese companies and officers to ensure that their Chinese filings, as opposed to American filings, are accurate. (*Id.* at ¶¶ 49-51). Second, the CAC argues that business professionals doing business in China regularly obtain SAIC filings, rather than simply relying on SEC filings, based on the belief that SAIC filings are more accurate. (*Id.* at ¶ 52). Third, the CAC contends that differences in U.S. and Chinese Generally Accepted Accounting Principles ("GAAP") are not marked enough to account for the extraordinary differences between China XD's SAIC and SEC filings. (*Id.* at ¶¶ 54-61.) Fourth, the CAC contends that because China XD's explanation for its superior financial results vis-à-vis

9

its primary competitors—*i.e.*, that it has superior Research & Development ("R&D") capabilities—is false,[10] the financial results themselves must be false.[11] (*Id.* at ¶ 6 ("China XD's claim that its superior profitability is driven by its substantial investment in R&D is false. It is no surprise, then, that China XD's claim to superior profitability is itself false."); *see id.* at ¶¶ 53, 62-76.)

Given the allegation that the SAIC figures are accurate, the reasonableness of the allegation that China XD's SEC filings are fraudulent depends entirely on whether the pleaded facts support a reasonable inference that there is indeed a significant discrepancy between comparable SEC and SAIC filings. *See* 15 U.S.C. § 78u-4(b)(1); *Rombach*, 355 F.3d at 174. The raw numbers in the CAC leave one to speculate as to whether a discrepancy exists between China XD's SEC and SAIC filings. Thus, the Plaintiffs' basis for their allegation that China XD's SEC filings are fraudulent is likewise speculation. The CAC fails to plausibly allege a material misstatement. *See ATSI Commc'ns*, 493 F.3d at 98.

The CAC acknowledges that China XD files a single statement consolidating the financials of all of its subsidiaries with the SEC, while, in contrast, it files separate financial statements for each of its subsidiaries with the SAIC. (CAC at ¶ 50 (stating that China XD's *subsidiaries* file annual reports with the SAIC, not a single filing made by China XD as parent company); *id.* at ¶13 n.17 (indicating that the financial figures filed by each China XD subsidiary had to be summed to

---

[10] The CAC claims that China XD's R&D investment is not as much as it says it is because of purported misstatements in its SEC filings regarding the number of R&D professionals it employs. According to nine Confidential Witnesses, China XD employed anywhere from 30-70 R&D professionals during the relevant timeframe, but reports in its SEC filings that it employed 247 professionals. The CAC's allegation of purported misstatements regarding China XD's R&D headcount do not provide an independent basis to support the securities violations alleged.

[11] The CAC also appears to suggest that China XD's SEC filings are fraudulent because it entered the U.S. capital markets through a reverse merger. (*Id.* at ¶¶ 25-28.)

arrive at the total SAIC figures presented).) The CAC also acknowledges that proper due diligence requires obtaining the SAIC filings for *all* of a company's subsidiaries. (*Id.* at ¶ 52 (stating that proper due diligence requires "obtaining the *entire* SAIC file" (emphasis added).)

Notwithstanding these acknowledgements, the CAC does not separately identify any of China XD's individual subsidiaries nor separately present the relevant financial data for any subsidiary so an accurate aggregate comparison can be made to China XD's SEC filings.[12] In fact, the CAC admits that the SAIC financial data it presents does not include the financial results of several China XD subsidiaries because Lead Plaintiffs were unable to obtain the SAIC filings for all of China XD's subsidiaries: "Lead Plaintiffs obtained SAIC filings for all of China XD's subsidiaries that have filed them, other than those responsible for China XD's Sichuan subsidiary—*i.e.*, Sichuan Xinda Enterprise Group Co. Ltd., Sichuan Xinda Group Meiyuan Enterprise Management Service Co., Sichuan Xinda Group Software Development Co. Ltd., and Sichuan Xinda Group Sales Co. Ltd." (*Id.* at 13 n.17.) This admission demonstrates that the financial data presented in the CAC fails to include the SAIC filings of at least two categories of China XD subsidiaries: (1) those who had not yet filed reports; and (2) those located in Sichuan.[13]

---

[12] The CAC's failure to attach or even reference comparable data in any of the SAIC filings may also be considered an independent pleading failure. *Cf. In re L&L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d 1147, 1153 (W.D. Wash. 2012) ("Plaintiff did not attach any of the SAIC or SEC filings to his complaint, making it virtually impossible to determine whether the comparisons he draws are apples-to-apples. What information defendants were asked to provide in each regulatory setting and the sources of that information cannot be ascertained directly.").

[13] The CAC alleged that the omission of the Sichuan subsidiaries' financial results was immaterial. (CAC at 13 n.17.) However, the Sichuan subsidiaries' SAIC filings reveal that they earned more than $100 million in revenue for 2013. (Reply Memorandum of Law in Further Support of Defendant China XD Plastics Company Limited's Motion to Dismiss the Consolidated Class Action Complaint ("Reply"), (ECF No. 31), at 3 n.3). The Court may take judicial notice of the Sichuan Subsidiaries' SAIC filings. *Supra* note 3. Furthermore, the Plaintiffs admit the veracity of this figure. (Sur-Reply in Opposition to Motion to Dismiss ("Sur-Reply"), (ECF No. 37), at 2-3). Any implication that these filings are fraudulent, (*id.*), is contradicted by the express allegations of the CAC, which state that SAIC filings are reliable. (CAC at ¶¶ 50-51.)

This failure proves fatal to the CAC. Without identifying which China XD subsidiaries' SAIC filings are missing, and why these omissions are immaterial, the missing subsidiaries' financials could close the gap between the incomplete SAIC financial data presented in the CAC and China XD's consolidated SEC filings. If including the missing subsidiaries' SAIC filings demonstrate that there is no discrepancy between China XD's SAIC and SEC filings, then material misstatements do not exist. It is not reasonable to infer that China XD's SEC filings must be false based upon a comparison to less than a complete set of its subsidiaries' SAIC filings. Any such allegation is pure speculation not supported by the factual allegations and filings incorporated by reference. It thus fails to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 677; *ATSI Commc'ns*, 493 F.3d at 98.

This conclusion squares firmly with this Court's prior decision in *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 567-68 (S.D.N.Y. 2012). The Plaintiffs in *Ho* "allege[d] that discrepancies between filings made with the . . . SAIC in China for two [of defendant's] subsidiaries . . . for the years 2006 to 2008 and the financial statements for those same years included in the SEC . . . Forms . . . , demonstrate that the SEC filings [were] false." *Id.* at 567 (alleging a violation of Section 11 of the Securities Act of 1933). The complaint in *Ho* isolated the financials of the relevant subsidiaries contained within the SEC filings that it contended were overstated, and compared them with each of the relevant subsidiaries' filings with the SAIC. Thus, this Court found that the comparison was "substantively appropriate." *Id.* at 568.

The CAC, in contrast, does not make a "substantively appropriate" comparison because the CAC does not say which 2012 or 2013 subsidiaries' financial results it is comparing to China XD's consolidated SEC filings.[14] *In re L&L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d at 1153

---

[14] It appears that the financial results for 2012 that Plaintiffs relied upon were based solely on the SAIC filing of one subsidiary, Heilongjiang Xinda Enterprise Group Company Limited. (*Compare* Declaration

12

(omission of information regarding the SAIC filings, including reporting periods, accounting treatment and auditing requirements made it "virtually impossible to determine whether the comparisons" to SEC filings were "apples-to-apples" and warranted dismissal); *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, No. MDL-11-2302-GW(CWx), 2012 WL 1983341, at *8 (C.D. Cal. May 31, 2012) (same).[15] Furthermore, the CAC significantly relies upon the unsubstantiated claim in the Bleecker Street Report that was later retracted. Accordingly, because the CAC has failed to plausibly allege a material misstatement, it is due to be dismissed.[16, 17]

---

of Brian G. Burke in Further Support of Defendant China XD Plastics Company Limited's Motion to Dismiss the Consolidated Class Action Complaint, (ECF No. 32), Exhibit C at 6 (showing RMB 3,005227692.27 as the 2012 main operating revenue for Heilongjiang Xinda Enterprise Group Company Limited, which at 6.31 RMB per USD is $476,264,293.55) *with* CAC ¶ 48 Table 1 (alleging the "true value derived from SAIC filings" for China XD's 2012 revenue as $476,172,618.94, almost exactly the same amount); *see also* Official Exchange Rate (LCU per US$, period average), The World Bank, available at: http://data.worldbank.org/indicator/PA.NUS.FCRF (last accessed Feb. 28, 2016)). *Supra* note 3. This information, along with *supra* note 13, underscores the speculative nature of the CAC's allegation that a genuine discrepancy between China XD's SEC and SAIC filings exists.

[15] In both *In re L&L Energy* and *In re A-Power*, the courts found that the comparison was not apples-to-apples, and therefore inappropriate, largely based upon the complaint's failure to adequately plead facts demonstrating that the differences between SAIC and SEC filings could not be attributed to different accounting methodologies. *Id.*

[16] It bears noting that at oral argument this Court invited Defendants to submit "a letter . . . with the attachments . . . and underlying documentation" in order to "demonstrate to [the Court] that [the Plaintiff's allegations] are not true." (Oral Argument Transcript, (ECF No. 41), at 86:18-87:1-5.) On January 11, 2016, the Defendants notified the Court and Plaintiffs that they intended to submit such a letter. (Letter, (ECF No. 43).) On January 29, 2016, Defendants made such a submission attaching what appear to be China XD SAIC filings and audited tax statements purporting to demonstrate that there is no discrepancy between China XD's SEC and SAIC filings. (Letter, (ECF No. 44).) Plaintiffs have not refuted or even responded to this submission. Nevertheless, Defendants' submission was unaccompanied by a sworn statement indicating how it obtained these documents, that the documents are true and correct copies of what they purport to be, and that the English translations are reliable. The submission is therefore itself not dispositive of the instant motion.

[17] Defendants also argued that the CAC should be dismissed because it has failed to plead loss causation and scienter. To meet their pleading burden with regard to scienter, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" as to each alleged false statement. 15 U.S.C. §78u-4(b)(1)-(2). The CAC first alleges that the Defendants possessed the requisite fraudulent intent based upon a 2011 article which appears to be cited in the Bleecker Street Report. (CAC at ¶ 79; *see* Fortinsky Decl., Exhibit B at 9.) However, Plaintiffs cannot plead fraudulent intent with particularity by pointing to another party's unproven and retracted allegations of fraud in the past with respect to a completely different set of statements. The CAC also alleges Defendants purposely

## IV. Conclusion

The Defendants' motion to dismiss the Third Amended Complaint is GRANTED. The Clerk of the Court is directed to close the motion docketed as ECF No. 24.[18] Plaintiffs may move within thirty (30) days, by letter application with an attached proposed amended complaint, for leave to amend if amendment would not be futile.

Dated: March 23, 2016
      New York, New York

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

overstated their financials to complete a bond offering. (*Id.* at ¶¶ 80-83.) However, the bond offering closed before the alleged misstatements included in China XD's 2013 10-K and 2014 10-Q were issued. Thus, the alleged misstatements could not have been driven by a desire to complete the offering. In their opposition, Plaintiffs argue that the "massive disparity" between China XD's SEC and SAIC filings demonstrates "conscious misbehavior and recklessness," and this satisfies the heightened pleading requirements as to the fraudulent-intent element. (Opposition to Motion to Dismiss, (ECF No. 29), at 28).) Plaintiffs' alleged disparity between SAIC and SEC filings, without more, does not suffice to establish a "strong inference" of scienter, since the very disparity claimed to exist is speculative. Plaintiffs do not allege any other factors supporting a strong inference of scienter.

[18] Defendants' unopposed letter motion for consideration of a proposed response to Plaintiffs' sur-reply, which was attached to the motion, has also been granted. (Letter Motion, (ECF No. 40).) The Clerk of Court is directed to close this motion as well.